

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

May 12, 2026

✓ FILED ___ ENTERED
___ LOGGED ____ RECEIVED

12:19 pm, Aug 04 2026

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ R.C. ___ Deputy

Julie M. Reamy, Esq.
Julie M. Reamy / Attorney At Law, LLC
115 W Saratoga Street
Baltimore, Maryland 21201

>        Re:    *United States v.* Dazhon Leslie Darien,
>               <u>Criminal No.  JKB-25-020</u>

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Dazhon Leslie Darien (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by May 22, 2026, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1.      The Defendant agrees to plead guilty to Count Five of the Indictment, charging the defendant with Sexual Exploitation of a Minor, in violation of 18 U.S.C. § 2251(a). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

### Elements of the Offense

2.      The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the dates specified in the Indictment, in the District of Maryland, the Defendant,

>        a.      Knowingly employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct;

>        b.      For the purpose of producing a visual depiction of such conduct; and

>        c.      The Defendant had reason to know that the visual depiction would be transported in interstate commerce, said visual depiction was transported in interstate or foreign

1

commerce, or the materials used to produce the visual depiction were transported in interstate commerce.

Penalties

3.      The maximum penalties provided by statute for the offense(s) to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 5 | 18 U.S.C. § 2251(a) | 15 years | 30 years | Life (min. 5y) | $250,000 | $100 and $5,000 |

a.      Prison:  If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release:  If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution:  The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, 3664 and § 2259(b)(2)(b).

d.      Special Assessments:  The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013 and may order additional special assessments for certain convictions pursuant to 18 U.S.C. §§ 3014 and 2259A.

e.      Payment:  If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d).  The Defendant may be required to pay interest if the fine is not paid when due.

f.      Forfeiture:  The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

g.      Collection of Debts:  If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt.  If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law.  Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control.  Until the money judgment is satisfied, the Defendant

2

Rev. August 2018

authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

## Sex Offender Registration

4.    The Defendant understands and agrees that, as a consequence of the Defendant's conviction for the crimes to which the Defendant is pleading guilty, the Defendant will be required to register as a sex offender in the place where the Defendant resides, is an employee, and is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of the Defendant's residence. Failure to do so may subject the Defendant to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

5.    The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.    If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.    If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.    If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.    The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.    If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the

3

Rev. August 2018

charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

## Factual and Advisory Guidelines Stipulation

7.      This Office and the Defendant understand, agree, and stipulate to the Stipulation of Facts set forth in Attachment A, which this Office would prove beyond a reasonable doubt, and is incorporated by reference herein. The parties further stipulate and agree, pursuant to the United States Sentencing Guidelines ("U.S.S.G.") § 1B1.2(c), that the Stipulation of Facts establishes the commission of additional offenses, and the plea agreement shall be treated as if the Defendant had been convicted of additional counts charging those offenses. The parties stipulate and agree to the following applicable sentencing guideline factors:

4

Rev. August 2018

Group One:  Sexual Exploitation of Minor Victim 1 (Count One, July 20, 2023):

a.    The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

b.    Pursuant to U.S.S.G. § 2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was older than the age of 12 but under the age of 16 at the time of the offense. [Subtotal: 34].

c.    Pursuant to U.S.S.G. § 2G2.1(b)(6)(B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. [Subtotal: 36].

Group Two:  Sexual Exploitation of Minor Victim 1 (Count Two, December 13, 2023):

d.    The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

e.    Pursuant to U.S.S.G. § 2G2.1(b)(6)(B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. [Subtotal: 34].

Group Three:  Sexual Exploitation of Minor Victim 1 (Count Three, February 29,2024):

f.    The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

g.    Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact.  [Subtotal: 34.]

h.    Pursuant to U.S.S.G. § 2G2.1(b)(6)(B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. [Subtotal: 36].

Group Four:  Sexual Exploitation of Minor Victim 1 (Count Four, March 22, 2024):

i.    The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

j.    Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact.  [Subtotal: 34.]

k.    Pursuant to U.S.S.G. § 2G2.1(b)(6)(B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce,

Rev. August 2018

entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. [Subtotal: 36].

Group Five: Sexual Exploitation of Minor Victim 1 (Count Five, June 28, 2024):

l.    The base offense level for sexual exploitation of a child is 32, pursuant to U.S.S.G. § 2G2.1(a).

m.    Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact. [Subtotal: 34.]

n.    Pursuant to U.S.S.G. § 2G2.1(b)(6)(B), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce a minor to engage in sexually explicit conduct for the purpose of producing sexually explicit material. [Subtotal: 36].

Group Six: Coercion and Enticement of Minor Victim 1 (Count Seven, July 2023 through July 2024):

o.    Pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level for coercion and enticement of a minor is 28.

p.    Pursuant to U.S.S.G. § 2G1.3(b)(3)(A), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce, or facilitate the travel of the minor to engage in prohibited sexual conduct. [Subtotal: 30].

q.    Pursuant to U.S.S.G. § 2G1.3(b)(4)(A)(i), there is a two (2) level increase because the offense involved the commission of a sex act. [Subtotal: 32].

Group Seven: Coercion and Enticement of Minor Victim 2 (Count Seven, November 2023 through January 2024):

r.    Pursuant to U.S.S.G. § 2G1.3(a)(3), the base offense level for coercion and enticement of a minor is 28.

s.    Pursuant to U.S.S.G. § 2G1.3(b)(3)(A), there is a two (2) level increase because the offense involved the use of a computer or interactive service to persuade, induce, entice, coerce, or facilitate the travel of the minor to engage in prohibited sexual conduct. (Subtotal: 30).

Group Eight: Receipt of Child Pornography (Count Eight):

t.    Pursuant to U.S.S.G. § 2G2.2(a)(2), the base offense level is 22.

Rev. August 2018

u.      Pursuant to U.S.S.G. § 2G2.2(b)(2), there is a two (2) level increase because the material involved a prepubescent minor or a minor who had not attained the age of twelve (12) years. [Subtotal: 24].

v.      Pursuant to U.S.S.G. § 2G2.2(b)(5) there is a five (5) level increase because the Defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor. [Subtotal: 29].

w.      Pursuant to U.S.S.G. § 2G2.2(b)(6) there is a two (2) level increase because the offense involves the use of a computer or an interactive computer service. [Subtotal: 31].

x.      Pursuant to U.S.S.G. § 2G2.2(b)(7)(A) there is a five (5) level increase because the offense involved more than 600 images. [Subtotal: 36].

Grouping:

r.      Groups One, Three, Four, Five and Eight are the highest offense level (36), resulting in 5 units.  The offense level for Groups Two (34) and Six (32) are from 1 to 4 levels less serious, resulting in 2 additional units and the offense level for Group Seven (30) is from 5 to 9 levels less serious, resulting in ½ additional unit.  Therefore, there are 7½ units, and pursuant to U.S.S.G. §§ 3D1.4, 5 levels are added to the highest offense level. [Subtotal: 41].

8.      This Office does not oppose a two (2) level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one (1) level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty.  This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way. [Total: 38].

Chapter Four Enhancement:

9.      Pursuant to U.S.S.G. § 4B1.5(b) and Application Note 4(B), there is a five (5) level increase because the instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct. [Total: 43].

10.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a

7

part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

11.    Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

12.    At the time of sentencing, this Office will recommend that the Court impose a sentence of twenty-one (21) years of imprisonment.  This Office and the Defendant reserve the right to advocate for a reasonable period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a).

13.    The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment that this Office has agreed to dismiss at sentencing.

14.    At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

## Waiver of Appeal

15.    In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.    The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever.  This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.    The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.    The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

Rev. August 2018

Forfeiture

16.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

17.     Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities:

   a.   Apple iPhone 14 Pro Max, serial number H9KR2DKJ2T; and
   b.   iPhone 15 Pro, serial number FGK39X30Q5.

18.     The Defendant agrees to assist fully in the forfeiture of the above property.  The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

19.     The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint.  The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Abandonment

20.     The Defendant knowingly and voluntarily waives any right, title, and interest in the following property:  red iPhone 11 with a cracked screen and a cracked back, in a pink case with a butterfly and the word "BEAUTY" on the back of the case, seized on March 7, 2024 (the "Abandoned Property") and consents to its federal administrative disposition, official use, and/or destruction.

21.     The Defendant understands that he would have a right to file a claim to the Abandoned Property and waives his right to claim the Abandoned Property.  The Defendant agrees not to contest the vesting of title of the Abandoned Property in the United States Government and agrees to unconditionally release and hold harmless the United States Government, its officers, employees, and agents, from any and all claims, demands, damages, causes of actions, suits, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of or growing out of or affecting, directly or indirectly, the seizure or waiver of ownership interest in the Abandoned Property.  The Defendant agrees to execute any documents

9

Rev. August 2018

as necessary to the waiver of right, title and interest in the Abandoned Property, including any forms necessary to effect the Defendant's waiver of ownership interest.

## Restitution

22. The Defendant agrees to the entry of a restitution order for the full amount of the Victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation.

23. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the United States' ability to collect additional amounts from Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to this Office, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and this Office may seek to be relieved of its obligations under this Agreement.

## Restitution in Cases Involving the Sexual Exploitation of Children

24. Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), 18 U.S.C. § 3664, and 18 U.S.C. § 2259, the defendant agrees to make full restitution to all minor victims of his offenses as to all counts charged, whether or not the defendant enters a plea of guilty to such counts and whether or not such counts are dismissed pursuant to this agreement. Further, the defendant agrees to pay restitution to any of his minor victims, for the entire scope of his criminal conduct, including but not limited to all matters included as relevant conduct. The defendant acknowledges and agrees that this criminal conduct (or relevant conduct) includes any minor victim of any child pornography offenses, charged or uncharged, under Chapter 110, United States Code, and any minor victim of any violation of federal and/or state law committed by the defendant, including any contact sexual offense. Further, pursuant to 18 U.S.C. § 3664(d)(5), the defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing.

## Additional Special Assessments in Sex Crimes Cases

25. Pursuant to 18 U.S.C. § 3014 (the Justice for Victims of Trafficking Act "JVTA"), since the offense of conviction is under Chapter 110 (relating to sexual exploitation and other abuse of children), the Defendant must pay an additional special assessment of $5,000, unless the Defendant is indigent.

10

Rev. August 2018

26.     Assessments in Child Pornography Cases: Pursuant to 18 U.S.C. § 2259A (the Amy, Vicky, and Andy Child Pornography Victim Assistance Act "AVAA"), in addition to any other criminal penalty, restitution, or special assessment authorized by law, the court shall assess: (1) not more than $17,000 on any person convicted of an offense under section 2252(a)(4) or 2252A(a)(5); (2) not more than $35,000 on any person convicted of any other offense for trafficking in child pornography; and (3) not more than $50,000 on any person convicted of a child pornography production offense.

## Defendant's Conduct Prior to Sentencing and Breach

27.     Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

28.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

29.     The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

11

Rev. August 2018

## Entire Agreement

30.    This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

Paul E. Budlow
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

5-21-26
Date

Dazhon Leslie Darien

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

3/21/26
Date

Julie M. Reamy, Esq.

12

Rev. August 2018

## Attachment A

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Dazhon Leslie Darien ("Darien"), age 31-32 at the time of these offenses, is a resident of Houston, Texas, and was previously a resident of Baltimore, Maryland. Between July 2023 through July 2024, Darien sexually exploited at least five minor males between the ages of 14 years old and 17 years old. Darien used the Snapchat application to communicate with the victims, and he then caused the victims to create sexually explicit images and videos and send them to him. Darien saved the images and videos on his phones and iCloud account. For at least one of the victims (Minor Victim 1), Darien induced the victim by paying him to create the sexual images and videos.

Darien exploited the minors while he was an administrator and a coach at a Maryland high school, where he had regular access to minor boys. Darien continued to exploit minors following law enforcement's search of his residence in March 2024, and continued to exploit minors after he was charged with unrelated criminal conduct in state court.

From April 2023 to June 2024, Darien worked for the Baltimore County Public Schools, initially as a high school teacher, then as an athletic director.

### Darien's Sexual Exploitation of Minor Victim 1 (age 15-16) (Groups One through Six):

Darien exploited Minor Victim 1 for over a year, while the victim was 15-16 years old. Darien regularly paid Minor Victim 1 in exchange for sexually explicit videos, using the money transfer application CashApp.

Darien communicated with Minor Victim 1 using the Snapchat application beginning no later than July 2023. Minor Victim 1 told Darien that he was 15 years old. Darien offered to pay Minor Victim 1 for sexually explicit pictures and videos. Minor Victim 1 agreed to produce the videos and sent the videos to Darien who paid Minor Victim 1 using CashApp. Minor Victim 1 produced videos in exchange for payment from Darien on multiple occasions, during which Darien directed Minor Victim 1 expose his genitals, to masturbate, and to insert objects into his anus during the videos.

Using CashApp, Darien paid Minor Victim 1 nine separate times between December 2023 and March 2024, totaling $224. Many of the payments occurred on the same day that the videos were created and sent.

Between July 2023 and June 28, 2024, Darien caused Minor Victim 1 to produce and send to him at least 19 videos of Minor Victim 1 engaged in sexually explicit conduct. The

1

Rev. August 2018

videos were located in Darien's Google account, Darien's iCloud accounts, and on Darien's iPhone 14. Five of the videos are described below.

Additionally, when Darien was arrested on federal charges on January 27, 2025, an Apple iPhone 15 Pro, serial number FGK39X30Q5, was seized from his person. Investigators located a depiction of Minor Victim 1 on the phone.

Group One: Sexual Exploitation of Minor Victim 1 (Count One, July 20, 2023):

A video file partially titled, "AE~v4.mp4" that depicts Minor Victim 1 naked from the waist down with his genitals and anus exposed and displayed in a lascivious manner. The file was received by Darien on July 20, 2023, and was located on Darien's iPhone 14 and in one of his Snapchat accounts. Minor Victim 1 was 15 years old at the time of the video's creation.

Group Two: Sexual Exploitation of Minor Victim 1 (Count Two, December 13, 2023):

A video file partially titled, "103_0_0.mov" that depicts Minor Victim 1 naked from the waist down with his genitals and anus exposed and displayed in a lascivious manner. The video was created on December 13, 2023, and was located on Darien's iPhone 14 and in two of his iCloud accounts. Minor Victim 1 was 16 years old at the time of the video's creation.

Group Three: Sexual Exploitation of Minor Victim 1 (Count Three, February 29, 2024):

Two video files partially titled, "dfwua.mov" and "726_0_0.mov" that depict Minor Victim 1 naked from the waist down with his genitals exposed and displayed in a lascivious manner and Minor Victim 1 masturbating his exposed genitals. The video was created on February 29, 2024, and was located on Darien's iPhone 14 and in Darien's Google account. Minor Victim 1 was 16 years old at the time of the video's creation.

Group Four: Sexual Exploitation of Minor Victim 1 (Count Four, March 22, 2024):

A video file partially titled, "1194_0_0.mov" that depicts Minor Victim 1 naked from the waist down with his genitals exposed and displayed in a lascivious manner and Minor Victim 1 masturbating his exposed genitals. The video was located in Darien's iCloud account and was created on March 22, 2024. Minor Victim 1 was 16 years old at the time of the video's creation.

Group Five: Sexual Exploitation of Minor Victim 1 (Count Five, June 28, 2024):

Two video files partially titled, "6efd0.mp4" and "v4.zip.mp4" that depict Minor Victim 1 masturbating his exposed genitals and digitally penetrating his anus. The video was located in on of Darien's Snapchat accounts, and was created on June 28, 2024, when Minor Victim 1 was 16 years old.

**Darien's Sexual Exploitation of Minor Victim 2 (age 14) (Group Seven):**

2

Rev. August 2018

Using text messages through his iCloud account, Darien communicated with Minor Victim 2 between November 2023 and January 2024. Minor Victim 2 was 14 years old and told Darien that he was a freshman in high school. Darien told Minor Victim 2 that he was a high school principal.

Shortly after the communication began, Darien discussed sexual activity with Minor Victim 2 and began to make plans for Darien and Minor Victim 2 to meet in person.

Minor Victim 2 sent Darien a photograph of his face, and Minor Victim 2 also sent Darien an image of his buttocks. During their communication, Minor Victim 2 provided Darien with his address, and Darien arranged to have food from Chik Fil A purchased and delivered to Minor Victim 2's residence. Darien also sent two $20 payments to Minor Victim 2.

Some of the communications between Darien and Minor Victim 2 were located in Darien's iCloud account and on his iPhone 14, including the following:

- o Minor Victim 2:    That's why I barley go out
- o Darien:    lol you gonna come see me tho
- o Minor Victim 2:    What time?
- o Darien:    I'm thinking like 10/1
- o Minor Victim 2:    11 or 12
- o Darien:    Yeah
- o Minor Victim 2:    Bet
- o Darien:    What you tryna do
- o Minor Victim 2:    Suck your rick
   Dick*
- o Darien:    😋
   Can you take it

Darien told Minor Victim 2 that Minor Victim 2 needed a sex toy and then offered to purchase him a "pocket pussy." After Minor Victim 2 sent Darien the website link for the sex toy, Darien responded, "Done," and then told Minor Victim 2 that he would give it to him if they met in person.

During the iCloud messaging, Darien directed that Minor Victim 2 move their communications to the Grindr and Jack'd applications, and he did. Grindr and Jack'd are both encrypted social network dating applications.

### Darien's Communication With and Sexual Exploitation of Additional Minors:

The examination of Darien's devices and accounts revealed that Darien was also communicating with addition minors between November 2023 through July 2024.

Minor Victim 3:

Rev. August 2018

3

Minor Victim 3 lived in Baltimore Maryland and was 16 years old when he communicated with Darien. Darien and Minor Victim 3's communications included discussions about sending videos and pictures and arranging to meet.

Minor Victim 4:

Minor Victim 4 lived in Baltimore, Maryland and was 16 years old when he communicated with Darien using iCloud messages. A video depicting Minor Victim 4's exposed genitals was located in one of Darien's Snapchat accounts.

Minor Victim 5:

Minor Victim 5 lived in Brandywine, Maryland and was 17 years old when he communicated with Darien. A video depicting Minor Victim 5 with his genitals and anus exposed and displayed in a lascivious manner was located in one of Darien's Snapchat accounts. Darien and Minor Victim 5 arranged to meet, and Minor Victim 5 gave oral sex to Darien.

Minor Victim 6:

Minor Victim 6 lived in Houston, Texas and was 15-16 years old when he communicated with Darien. Darien's sent Minor Victim 6 payments using CashApp in exchange for nude images of Minor Victim 6. The images were not located in Darien's accounts or on his iPhone 14.

Minor Victim 7:

Minor Victim 7 lived in Las Vegas, Nevada. Darien's sent Minor Victim 7 two payments using CashApp. Minor Victim 7 was 15 years old at the time.

Minor Victim 8:

Minor Victim 8 lived in Texas and was 14. Over the course of three days in March 2024, Darien's sent Minor Victim 8 payments using CashApp. One of the payments was captioned "priv- what's your snap name again?"

**March 2024 – Search Warrant and Seizure of Darien's Devices:**

On March 7, 2024, investigators with the Baltimore County Police Department ("BCPD") executed a search and seizure warrant at Darien's residence in Baltimore, Maryland. During the searches, BCPD located and seized various electronic devices, including Darien's Apple iPhone 14 Pro Max, serial number H9KR2DKJ2T, that was located in his bedroom. Federal search warrants were obtained for Darien's electronic devices, which included the iPhone 14 Pro Max.

In addition to the files described above, investigators also located approximately 20 videos depicting children engaged in sexually explicit conduct, to include prepubescent children. The files were obtained through the encrypted application Telegram. The Telegram application was

4

Rev. August 2018

installed on Darien's iPhone 14, with the Telegram account in the name of Lamont Bishop, and the username "xaviermajor" which is a moniker that Darien frequently uses.

Descriptions of two of these videos are below:

i. Video File 10 depicts a prepubescent female, naked lying on her back with her arms spread to each side. An erect adult penis ejaculates on the child's face.

ii. Video File 11 depicts a nude prepubescent male lying sleeping on his stomach on a bed. The child's legs are spread, exposing his genitalia. A nude adult male lies down on the bed next to the child and begins rubbing his erect penis and fingers against the child's anus. The adult male then anally penetrates the child with his penis.

The defendant agrees that the images and videos described above were produced using materials that have been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer.

The devices used by Darien to communicate with the victims listed above were made outside of Maryland. Darien admits that he used a facility and means of interstate commerce, to persuade, induce, entice, and coerce the victims listed above to engage in sexual activity, and that he could have been charged with a criminal offense for engaging in the sexual activity.

The events described above occurred in the District of Maryland (until June 2024) and the Southern District of Texas (June and July 2024).

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the government in this case.

_____
Dazhon Leslie Darien

I am the attorney for the defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

_____
Julie M. Reamy, Esq.
Counsel for Defendant

5

Rev. August 2018